Mattie M. Brock, Guardian, v. United Moderns.

Decided May 4, 1904.

**1.—Insurance—Warranties—Evidence.**

The question, "How long since you were under the care of a physician and for what cause?" with answer by an applicant for insurance, "Never," when it was shown that a physician had treated him for granulated eyelids, and warranty that his answers were true, involved no uncertainty or ambiguity which would permit its effect to be avoided by expert medical evidence that such complaint was a mere local inflammation and not a condition of health.

**2.—Leading Question.**

A question which did not indicate the answer derived was not objectionable, though capable of being answered by yes or no; or, if so, its admission was not ground for reversal where it was merely preliminary to other questions eliciting the facts to be proved.

**3.—Insurance—Warranty—Charge.**

Where the evidence is uncontradicted that the warranty of an applicant for insurance as to the truth of the answers made on his medical examination was broken, it was proper to direct a verdict for defendant in a suit on the policy.

Appeal from the District Court of Dallas.   Tried below before Hon. T. F. Nash.

*Hilbrant & Scott,* for appellant.

*E. W. Smith, M. B. Johnson,* and *J. J. Eckford,* for appellee.

EIDSON, Associate Justice.—This is an an action brought by the appellant as guardian of Maxcie O. Brock, a minor, upon a beneficiary membership certificate, issued by the appellee, the United Moderns, upon the life of H. A. Brock and payable to Maxcie O. Brock, son of the said H. A. Brock.

The appellant's first amended original petition alleged the issuance by the appellee of a benefit certificate upon the life of H. A. Brock for the sum of $1000, payable to Maxcie O. Brock, son.   It further alleged that on or about the 14th day of June, 1901, and while said certificate was in full force and effect, the said H. A. Brock departed this life. It alleged the payment of premiums and notice of proof of death, and that said certificate became due and payable sixty days after notice of death.

Appellee in its first amended original answer presented general demurrer, general denial and answered specially admitting the issuance of the certificate, and alleging that it was issued in consideration that the statements made in the application of H. A. Brock for such certificate, and the answers made by said H. A. Brock to questions asked him in the medical blank, were true, and the truth of which he, the said Brock, guaranteed.   Further, that it was issued upon condition that said Brock should comply in every particular with the constitution and laws and regulations of said order; that the certificate should be and remain null and void during any failure or default on his part.   It further

alleged that the insured agreed to be bound by the constitution, laws, rules and regulations of the order enacted from time to time by the supreme authority. It further alleged that the said Brock warranted the answers given to the medical examiner to be full and true, and that the same should be a part of the application for membership. Appellee further alleged that H. A. Brock had falsely answered questions numbers 6 and 7 in the medical examiner's report, which said questions and answers are as follows:

"No. 6. Have you consulted or been advised by any physician regarding your health within the last five years? If so, whom, when and for what ailment?" Answer: "No."

"No. 7. If not treated within five years, how long since you were under the care of a physician, and for what cause?" Answer: "Never."

Appellee in its answer further alleged want of knowledge on the part of it of the untruthfulness of the statements, until after the death of said Brock. It further alleged that the constitution and laws of the order provided, among other things, "If a members dies in consequence of a duel or by self-destruction, whether sane or insane, then in such cases the beneficiary certificate shall become null and void." It further alleged that said H A. Brock died by self-destruction by taking poison with intent to kill himself.

Appellant replied by first supplemental petition, excepting to that portion of the answer which set up the condition of forfeiture, on the ground of having made false statements, because it did not show a breach of warranty on the part of H. A. Brock, and because the application and examiner's report were not a part of the contract of insurance declared upon, and because the said Brock had not violated the constitution and the rules of the order. And further answered that granulated eyelids is not a condition of health, but merely trivial local affection. Further alleging that appellee had notice of treatment for the eyes, if any treatment had been had.

To which allegations the appellee in its first supplemental answer excepted. Appellee in its answer tendered back all dues paid on said benefit certificate.

The court overruled appellant's exceptions and sustained appellee's special exceptions. The case went to trial before a jury; and upon the conclusion of the evidence the court instructed the jury to return a verdict for the appellee, which was done and judgment entered accordingly, from which judgment appellant has perfected an appeal.

The policy or certificate of membership sued upon, so far as is material to be considered, is as follows: "The Supreme Lodge of United Moderns hereby certifies that Hiram A. Brock of Gate City Lodge No. 149 of United Moderns, located at Denison, Texas, is entitled to all the rights and benefits of membership, acccording to the constitution and laws of the order. And, in consideration of the statements made in the application for beneficiary certificates and in answer to questions asked in the medical blank, the truth of which said member guarantees, is en-

titled to participate in the beneficiary guarantee fund of the order, as upon a contract of life insurance, for thirty days, renewable by the member as provided by the constitution and laws of the order, to the amount of $1000, which sum, as provided in the constitution and laws of the order, shall be paid as follows: * * * Mortuary Benefit.— Within ninety days after satisfactory proof of the death of said member, there shall be paid to Maxcie O. Brock, son, if living, if not, the legal heirs of the member aforesaid, such balance, if any, of the amount named in this certificate as may remain unpaid to the member, as follows: If not exceeding $3000 in cash, and one-ninth of that part if any excess of $3000, on or before the anniversary of the first payment each year, until paid in full, with interest at 4 per cent per annum from and after the date of said payment. This certificate is issued in consideration of the statements made by said member in the application for membership and in answer to questions made in the medical blank, and in reliance thereon, and upon the expressed condition that the said member shall, in every particular, while a member of said order, comply with all and singular the constitution, laws and regulations of said order. * * *

"In witness whereof, the supreme lodge has caused these presents to be executed by its supreme chancellor and its supreme recorder, and the name and seal of the order to be affixed, this the 23d day of February, A. D. 1901.

(Signed) "United Moderns, by E. M. Johnson, Supreme Chancellor. Attest: E. W. Smith, Supreme Recorder."

"Member's Acceptance: This certifies that I accept the within certificate and the benefits conferred, fully understanding and agreeing that the same is to be and remain a liability upon the order, only upon condition: (1) That the statements made by me in my application for membership and the medical examiner's report are true. * * * (3) That I fully comply with the constitution, laws and regulations of the order. The within certificate to be and remain null and void for and during any such failure or default on my part, as aforesaid. Dated March 2, 1901. (Signed) Hiram A. Brock (Signature of member.)"

"Application for membership to Lodge No. 149 of the United Moderns, located at Denison, Texas: I, Hiram A. Brock, of Denison, Texas, hereby make application for certificate of membership and benefit to the amount of $1000, and for that purpose make the following statements as the basis for the application:

"1. Place of birth? Washington, County of Davis, State of Indiana.

"2. Date of birth? 22d day of December, 1872. Age, 28 years.

"4. (a) In what profession or occupation are you now actively engaged? (b) In what have you been engaged in the last ten years? Answers (a) and (b), Manager Sun Life Insurance Company.

"12. For whose benefit is this application made? Maxcie O. Brock, son.

"I, Hiram A. Brock, of Denison, Texas, do hereby warrant that each and all the particulars and statements contained in this application for insurance are true, complete and full. And I do hereby acknowledge, consent and agree that any untrue statement made herein by me, or on my behalf, or to any medical examiner, whether written by my hand or not; or any concealment of facts by me or anyone else, shall forfeit and cancel all rights to any benefit under the above named application. And I hereby expressly waive any and all provisions of law now existing, or that may hereafter exist, preventing any physician from disclosing any information acquired in attending me in a professional capacity or otherwise, or rendering him incompetent to testify as a witness in any way whatever. I agree to be bound by the constitution, laws, rules and regulations of the order, enacted from time to time by the supreme lodge, or other duly authorized authority.

"Dated at Denison, Texas, this the 21st day of February, 1901. (Signed) Hiram A. Brock. Witness: Reynolds and Squib."

"United Moderns, Denver, Colorado: Application. Part 2. Medical Examiner's Report.—The examiner is expected to answer each question distinctly, after a strict personal examination of the applicant at the time of filing this blank. The applicant will answer the following questions in full:

"4. What sickness or disease or injury have you ever had?" Answer: "None, except chills."

"5. Has your weight within two years increased; if so, how much? or diminished, and how much?" Answer: "No."

"6. Have you consulted or been advised by any physician regarding your health within the last five years? If so, whom, when and for what ailment?" Answer: "No."

"7. If not treated within five years, how long since you were under the care of a physician, and for what cause?" Answer: "Never."

"8. Have you ever had la grippe? If so, when?" Answer: "No."

"9. Have you now any ailment, disease or disorder?" Answer: "No."

"Applicant's warrant and waiver: I do hereby warrant that the answers as written to the above questions put by the medical examiner are full, complete and true, and the same shall be made a part of the herein referred to application for membership; and that I am the person who signed the application on the opposite side and was examined as above. If I have not been vaccinated, I hereby waive all claim in case of death or disability in case of smallpox. And further, I hereby waive all claim of death or disability due to the effect of vaccination hereafter. (Signed) H. A. Brock, Applicant."

Dr. Whitis, witness for appellant, testified: That he resided in Dallas; that during the months of January, February and March, 1900, he was engaged as a physician; that he was acquainted with Hiram A. Brock; "that Hiram A. Brock did consult me and had been advised by me as a physician in regard to his health within the five years prior

to June, 1901, and January, 1901. I first saw Mr. Brock about January 23, 1900. He consulted me and was advised by me with reference to granulated eyelids. I advised him with reference to granulated eyelids in January, 1900. I treated him for granulated eyelids, I think, about two months. I do not know that I ever treated Mr. Brock before June, 1900, for any other ailment except granulated eyelids. I may have given him a tonic or something of the sort. I advised him with reference to granulated eyelids in January, 1900. Granulated eyelids is generally an inflamed condition of the under surface of the eyelids, with more or less little granules upon the surface, and they rub the ball of the eye and bring on a kind of inflammatory condition, and if continued in, it generally brings on mopa cutae, or coats on the eye, so that the eyesight is bad. I do not know when I had the last consultation with him. He was coming to my office nearly every day for two months."

Appellant's first assignment of error is as follows: "The court erred in excluding the evidence of Dr. A. E. Elmore, offered by the appellant to show that granulated eyelids is not a condition of health, but is only a local inflammation, and that the answers given to questions 6 and 7 were correct, as shown in plaintiff's bill of exceptions No. 4." And the following proposition is submitted thereunder: "When the terms of a contract do not explicitly embrace a warranty or make a warranty a part of the contract, then extraneous evidence should be admitted to show the materiality of the terms of the contract, and the exclusion of such evidence is reversible error." And also the following proposition: "Where the terms of a written contract are ambiguous, indefinite ,or uncertain, extraneous evidence is admissible to show the meaning of the terms used in the contract, and the intent of the parties making the contract."

As to question 6 and its answer thereto, when viewed in connection with the testimony of Dr. Whitis, that he had been consulted by and had advised the insured with reference to granulated eyelids, there is some doubt in our minds as to whether the ailment of granulated eyelids is one that would be regarded as affecting the health; and as to that question and the answer thereto, it might have been proper for the court to have permitted appellant to introduce expert testimony explanatory of what ailments would be regarded as affecting the health. But we have no doubt in reference to question 7 and the answer thereto. There is no ambiguity or uncertainty whatever connected with this question, or the answer thereto, which would require any explanation. It is clear from the policy or certificate of insurance, when construed in connection with the application of the insured, that the statements made by him in answer to the questions of the medical examiner were by the contract made warranties. Life Assn. v. Harris, 94 Texas, 25; Flippin v. State Life Ins. Co., 30 Texas Civ App., 362.

In appellant's fifth assignment of error, complaint is made of the action of the court in allowing the witness Dr. Whitis to answer the

question, "Did H. A. Brock ever consult or had he ever been advised by you as a physician in regard to his health in the five years previous to January, 1901?" The answer to which was, "Yes," upon the ground that such question was leading. There is nothing in this question to suggest the answer desired, and besides, it appears to be preliminary to other questions that were designed to elicit the facts sought to be proven, and, in view of the other testimony of this witness which was unobjectionable, the permission of the question and admission of the answer was harmless.

In view of the holding of this court above indicated, the matters to which appellant's sixth, seventh and tenth assignments of error relate become immaterial.

Appellant's eleventh assignment of error complains of the action of the court below in instructing the jury to return a verdict for the defendant. We are of the opinion that there was no error in this action of the court. The statement of the insured in answer to question number 7, hereinabove quoted, being a warranty, and the undisputed proof showing the falsity thereof, authorized and justified the court in giving such instruction to the jury. Flippen v. State Life Ins. Co., 30 Texas Civ. App., 362; Fidelity M. L. Assn. v. Harris, 94 Texas, 25; 1 May on Ins., 3 ed., 622; Metropolitan L. Ins. Co. v. McTeague, 49 N. J. L., 587; Cobb v. Association (Mass.), 26 N. E. Rep., 230.

Finding no reversible error in the record, the judgment of the court below is affirmed.

*Affirmed.*